**Scott J. HOFFMAN, an incompetent person, by Harriet Hoffman, the Conservator of his person and estate, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 84–5572.**

United States Court of Appeals, Ninth Circuit.

Argued Dec. 6, 1984.

Submitted July 26, 1985 *.

Decided Aug. 9, 1985.

---

* Submission was withheld pending the decision of the Supreme Court of California in *Fein v. Permanente Medical Group*, 211 Cal.Rptr. 368, 38 Cal.3d 137, 695 P.2d 665 (1985) (decided February 28, 1985); (rehearing denied April 25, 1985).

Arthur E. Schwimmer, Los Angeles, Cal., for plaintiff-appellee.

Stephen E. O'Neil, Asst. U.S. Atty., Los Angeles, Cal., S. Thomas Todd, Encino, Cal., for defendant-appellant.

Before BOOCHEVER and HALL, Circuit Judges, and JAMESON **, District Judge.

JAMESON, District Judge:

The United States has appealed from a judgment of the district court holding unconstitutional section 3333.2 of the California Civil Code, which limits recovery for noneconomic losses in medical malpractice suits to $250,000. We reverse.

## I. Facts and Proceedings Below

The appellee, Scott J. Hoffman, on May 12, 1981, went to the Veterans Administration Hospital, Wadsworth, Los Angeles, California, for treatment of a lacerated tendon in his right middle finger. As a result of the negligent administration of a general anesthetic during the finger surgery, Hoffman suffered an anoxic brain injury. Hoffman is confined permanently to a bed and a wheelchair. He experiences recurrent and painful body spasms and his ability to communicate verbally is impaired.

Hoffman, through Harriet Hoffman, the conservator of his person and estate, brought this action against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671 et seq. The United States admitted liability. In a non-jury trial on the issue of damages the court

entered a total judgment against the United States of $4,179,100—$3,179,100 for economic damages and $1,000,000 for noneconomic damages.

Under the Federal Tort Claims Act the federal courts apply the law of the state where the claim against the United States arose. 28 U.S.C. § 1346(b). Section 3333.2 of the California Civil Code limits noneconomic losses in professional negligence suits against health care providers to $250,-000. In allowing the $1,000,000 award for noneconomic damages, the court concluded that section 3333.2 "is unconstitutional in that it violates equal protection."[1] The court found that section 3333.2 violated equal protection because it "discriminates between medical malpractice victims with noneconomic losses that exceed $250,000 and all other tort victims with noneconomic losses, including medical malpractice victims with smaller losses." The court found, relying on *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 836 (1980) and *Jones v. State Board of Medicine*, 97 Idaho 859, 874-75, 555 P.2d 399, 414-15 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), that the "necessary correspondence between the special treatment of medical malpractice victims, with noneconomic losses that exceed $250,000 and the legislative goal of lowering medical malpractice premiums is lacking because paid out damages constitutes only a small part of total insurance premium costs and few individuals suffer noneconomic damages in excess of $250,000."

## II. Issue on Appeal

The sole remaining issue on appeal is whether section 3333.2 of the California Code violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2] U.S. Const. amend. XIV, § 1.

---

** The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The district court did not specifically state whether its holding was based on the Constitution of the United States or Constitution of the State of California or both.

2. The briefs of the parties and *amici curiae* briefs filed by the California Trial Lawyers Association in support of appellee and by the California Hospital Association in support of appellant all discuss at length whether the statute violated the equal protection provision of the California Constitution. This question was de-

### III. *California Civil Code § 3333.2*

In May 1975, the Governor of California convened a special session of the California Legislature because of problems resulting from the rapid increase in medical malpractice insurance premiums. Many doctors had decided to limit their practice to specific areas of medicine. Others were practicing with no insurance. In response to this perceived emergency, the Legislature enacted the Medical Injury Compensation Reform Act of 1975 (MICRA). The general provisions of the act are described by the California Supreme Court:

> In broad outline, the act (1) attempted to reduce the incidence and severity of medical malpractice injuries by strengthening governmental oversight of the education, licensing and discipline of physicians and health care providers, (2) sought to curtail unwarranted insurance premium increases by authorizing alternative insurance coverage programs and by establishing new procedures to review substantial rate increases, and (3) attempted to reduce the cost and increase the efficiency of medical malpractice litigation by revising a number of legal rules applicable to such litigation.

*American Bank & Trust Co. v. Community Hosp. of Los Gatos-Saratoga, Inc.,* 204 Cal.Rptr. 671, 673, 36 Cal.3d 359, 683 P.2d 670, 672 (1984).

Section 3333.2, a part of MICRA, provides in relevant part:

> (a) In any [medical malpractice] action ... the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

> (b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000).

In *Fein* the California Supreme Court held that in the light of its discussion of the legislative history and purposes of MICRA in *American Bank, supra,* and other prior cases,[3] "it is clear that section 3333.2 is rationally related to legitimate state interests." 211 Cal.Rptr. at 383, 695 P.2d at 680. The court noted that it had explained in those decisions that "in enacting MICRA the Legislature was acting in a situation in which it had found that the rising cost of medical malpractice insurance was posing serious problems for the health care system in California, threatening to curtail the availability of medical care in some parts of the state and creating the very real possibility that many doctors would practice without insurance, leaving patients who might be injured by such doctors with the prospect of uncollectible judgments."[4] *Id.*

### IV. *Equal Protection*

#### A. *Standards Applied*

Traditionally two standards have been applied where a state statute has been challenged on equal protection grounds—strict scrutiny and rational basis.

 Strict scrutiny is applied when the classification involves a suspect classification, i.e., race, *McLaughlin v. Florida,* 379 U.S. 184, 191–92, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964); ancestry, *Oyama v. California,* 332 U.S. 633, 644–46, 68 S.Ct. 269, 274–75, 92 L.Ed. 249 (1948); and alienage, *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971); or categorizations impinging upon a fundamental right, i.e., privacy, *Roe v.*

---

cided by the Supreme Court of California, subsequent to oral argument in this case, in *Fein v. Permanente Medical Group, supra,* the California Court holding that section 3333.2 is constitutional.

**3.** *Barme v. Wood,* 207 Cal.Rptr. 816, 37 Cal.3d 174, 689 P.2d 446 (1984), and *Roa v. Lodi Medical Group, Inc.,* 211 Cal.Rptr. 77, 37 Cal.3d 920, 695 P.2d 164 (1985).

**4.** The court said further: "It is worth noting, however, that in seeking a means of lowering malpractice costs, the Legislature *placed no limits whatsoever on a plaintiff's right to recover for all of the economic, pecuniary damages—such as medical expenses or lost earnings—resulting from the injury,* but instead confined the statutory limitations to the recovery of *noneconomic damages,* and—even then—permitted up to a $250,000 award for such damages." *Id.* (Emphasis in original).

*Wade,* 410 U.S. 113, 154–64, 93 S.Ct. 705, 727–32, 35 L.Ed.2d 147 (1973); marriage, *Zablocki v. Redhail,* 434 U.S. 374, 383–87, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978); voting, *Bullock v. Carter,* 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972); travel, *Shapiro v. Thompson,* 394 U.S. 618, 627, 89 S.Ct. 1322, 1327, 22 L.Ed.2d 600 (1969); and freedom of association, *NAACP v. Alabama,* 357 U.S. 449, 460–62, 78 S.Ct. 1163, 1170–72, 2 L.Ed.2d 1488 (1958). To withstand strict scrutiny a statute must be precisely tailored to serve a compelling state interest. *Plyler v. DOE,* 457 U.S. 202, 216, 217, 102 S.Ct. 2382, 2394, 2395, 72 L.Ed.2d 786 (1982).[5]

In cases not involving a suspect classification or a fundamental right, the state statutes have been tested under the rational basis standard. *See, e.g., McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961), where the Court said:

> The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it.

■ In recent years an intermediate level of scrutiny has begun to develop. *See* Gunther, *Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L. Rev. 1, 20–24 (1972). Under this standard, a statutory classification is validated if it *substantially furthers* a purported legislative purpose. Although the reviewing court does not question the legitimacy of the legislative rationale, a state must give greater justification for a statute classification than is required for rational basis analysis. 591 F.2d 1164 at 1172–73 (5th Cir.

1979). The Supreme Court has applied this intermediate level of scrutiny only to gender based classifications, *see, e.g., Craig v. Boren,* 429 U.S. 190, 199–204, 97 S.Ct. 451, 458–60, 50 L.Ed.2d 397 (1976); and to categorizations premised on legitimacy. *See, e.g., Trimble v. Gordon,* 430 U.S. 762, 767–68, 97 S.Ct. 1459, 1463–64, 52 L.Ed.2d 31 (1977).

### B. *Proper Standard for this Case—Rational Basis*

In *Brandwein v. Cal. Bd. of Osteopathic Examiners,* 708 F.2d 1466, 1470 (9th Cir. 1983), we expressly recognized that, "Strict scrutiny is the proper test of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Since malpractice victims with noneconomic losses that exceed $250,000 do not constitute a suspect class and the right to recovery of tort damages is not a fundamental right, strict scrutiny is not appropriate in this case. We need then only determine whether the intermediate level of scrutiny or the rational basis test is appropriate.

In *In re Paris Air Crash,* 622 F.2d 1315, 1320 (9th Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980), we applied the rational basis test in upholding the constitutionality of a California statute disallowing punitive damages in wrongful death actions. We relied upon two Supreme Court decisions sustaining tort liability limitations—*Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 82–84, 93–94, 98 S.Ct. 2620, 2635–36, 2640–41, 57 L.Ed.2d 595 (1978), and *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In *Duke Power Co.,* the Court sustained a ceiling on aggregate liability for nuclear accidents. In *Mobil Oil,* the Court upheld a statute which allowed recovery for tortiously caused death only if the death occurred within the state's territorial waters.

---

**5.** Where the legislative classification "give[s] rise to recurring constitutional difficulties," the court must inquire into "whether it may fairly be viewed as furthering a substantial interest of the State." *Id.* at 217–18, 102 S.Ct. at 2395.

Dependents no longer had a claim once a vessel crossed the imaginary three-mile line.

The Fourth, Fifth and Eighth Circuits have applied the rational basis test where medical malpractice victims are treated differently than victims of other torts. In *Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1173 (5th Cir.1979), an action challenging a Florida statute mandating that a malpractice claimant participate in a mediation process prior to bringing action in court, the court rejected the means scrutiny test and applied the rational basis test. The court held that the statute in question need not be evaluated under the strict scrutiny test, "as neither a suspect class nor a fundamental right is involved...." *Id.* at 1173. The court held further that because there is no fundamental right of recovery of tort damages, the burden is upon the challenger to show that the restriction is wholly arbitrary. *Id.* at 1174. *Accord Seoane v. Pharmaceuticals, Inc.,* 660 F.2d 146, 149–50 (5th Cir.1981), where the rational basis test was applied to a Louisiana statute which required review of medical malpractice claims by a medical review panel.

The Fourth Circuit similarly applied the rational basis test in holding constitutional a Virginia statute which required prior notice of intention to file a medical malpractice action and mediation by a panel of physicians and lawyers. *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287, 291 (4th Cir.1980). The Eighth Circuit, also applying the rational basis test, found constitutional an Iowa statute which treated certain malpractice victims differently than others. *Fitz v. Dolyak,* 712 F.2d 330, 332 (8th Cir.1983). The statute placed an absolute six year statute of limitations on malpractice actions except when foreign bodies unintentionally left in the body cause injury or death. Strict scrutiny was found to be inappropriate because neither a suspect classification nor a fundamental right was involved. *Id.* at 332 & n. 2 & 3. The "heightened scrutiny test" was likewise determined to be inappropriate because the case involved none of the classifications to which the Supreme Court has applied an intermediate test (illegitimacy or gender). *Id.* at 332.

█ Finding that section 3333.2 does not involve any suspect or quasi-suspect classification, a fundamental right, or a classification requiring a heightened scrutiny, we conclude that the proper level of scrutiny is the rational basis test.[6]

### C. *Application of the Rational Basis Test*

█ The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920). The initial discretion to determine what is "different" and what is "the same" lies in the state legislatures. The reviewing courts must allow the legislatures "substantial latitude" in order to "account for limitations on the practical ability of the State to remedy every ill." *Plyler,* 457 U.S. at 216, 102 S.Ct. at 2394. In applying the Fourteenth Amendment to most forms of state actions, reviewing courts should "seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.*

█ The Supreme Court, in *Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981), set forth a two step analysis for determining whether a challenged classification is rationally related to achieving a legitimate state purpose. First, it must be determined whether the challenged legislation has a legitimate purpose. If it does, the reviewing court must ascertain whether it was "reasonable for the lawmakers to believe that use of

---

**6.** The California Supreme Court in *Fein,* 211 Cal.Rptr. at 386, 695 P.2d at 683, also applied a rational basis standard in its analysis of the equal protection claim.

the challenged classification would promote that purpose[.]" [7] *Id.*

 The legislative purpose of section 3333.2 is not difficult to discern. Section 3333.2 was written as part of a complex plan designed to reduce the dramatic rise in medical malpractice insurance premiums. Since these high rates were adversely affecting the quality of the medical services provided to the people of California, reduction of the rates was a legitimate state purpose.

In *Brandwein,* 708 F.2d at 1471, we recognized that in examining the second prong of the rational basis test the reviewing court need only find a " 'plausible reason' " for the legislative action, and that it is " 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision'." (quoting *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)). We held further that the burden is upon the challenger of a legislative classification to prove that the facts on which the legislature may have relied " 'could not reasonably be conceived to be true by the governmental decisionmaker.' " *Id.* at 1470 (quoting *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979)). That the facts are arguably true is enough to justify legislative judgment. *Id.* at 1470–71 (quoting *Vance,* 440 U.S. at 112, 99 S.Ct. at 950). *See also In re Paris Air Crash,* 622 F.2d at 1319.[8]

The record clearly supports a finding that the California Legislature had a "plausible reason" to believe that the limitations on noneconomic recovery would limit the rise in malpractice insurance costs. As the Supreme Court of California noted in *Fein, supra,* the Legislature had found that the rising cost of medical malpractice insurance was threatening to curtail the availability of medical care and creating the real possibility that many doctors would practice without insurance, leaving patients who might be injured by such doctors with the prospect of uncollectible judgments. The amount of settlement and verdict payments will directly affect insurance premiums.[9] It was reasonable for the lawmakers to believe that placing a ceiling on noneconomic damages would help reduce malpractice insurance premiums. We conclude that there was a rational basis for section 3333.2 and that it does not violate the Equal Protection Clause of the Federal Constitution.

We reverse and remand to the district court to amend the judgment to limit the noneconomic damages to $250,000.

---

7. Hoffman claims that there is not a tight fitting relationship between the legislative goal to reduce malpractice insurance premiums and placing a ceiling on noneconomic recovery. This type of determination is not relevant in a rational basis analysis. All that is significant in a rational basis analysis is whether there is some reasonably conceivable statement of facts which would justify the classification. As stated by the Supreme Court: "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

8. We explained our reason for not applying a middle-tier analysis, 622 F.2d at 1319, n. 4, and noted further: "A court should be quite certain of its ground before making a categorical finding that there is no permissible objective served by a state statute or that there is utterly no sensible of discernable relation between the legislature's classification and a legitimate end." *Id.* at 1319.

9. The Insurance Commissioner, recommending that the Governor sign MICRA, projected that its tort reform measures would collectively result in a reduction in premiums over the long term of between 20 and 33 percent and that section 3333.2 alone would provide 6 to 10 percent of that amount. Enrolled Bill Report By the Department of Insurance on Assembly Bill 1 at 3, 8.