UNITED STATES DISTRICT COURT By_____
FOR THE NORTHERN MARIANA ISLANDS    (Deputy Clerk)

DAVID GOWER,                    )         CIVIL ACTION NO. 82-0066
                               )                        82-0054
        Plaintiff,             )
                               )
            vs.                )              DECISION
                               )
COMMONWEALTH OF THE            )
NORTHERN MARIANA ISLANDS,      )
                               )
        Defendant.             )
_____)

     In this action, the plaintiff David Gower seeks to recover in excess of $1,000,000 for injuries suffered due to the alleged negligence of staff employees of Dr. Torres Hospital, a government operated medical center. Named as the only defendant to the action is the Commonwealth of the Northern Mariana Islands. The Commonwealth now moves for partial summary judgment limiting the recoverable damages in the action to $100,000 based on 7 C.M.C. §§2201-2207. For the reasons stated below, the motion is granted.

                              I.

     7 C.M.C. § 2202 provides:

        The Commonwealth Government shall not be
        liable in tort for damages arising from
        the negligent acts of employees of the
        Commonwealth acting within the scope of
        their office or employment; provided,
        that:

> (a) The Commonwealth and any employees engaged in the performance of services on behalf of the Commonwealth shall not be liable in a suit based on the performance of those services for more than $50,000 in an action for wrongful death and $100,000 in any other tort action.[Emphasis added.]

Gower challenges both the validity of the statute generally and as applied to him. His arguments will be addressed in order.

Initially, Gower attacks the underlying doctrine of sovereign immunity, citing the landmark California Supreme Court case of Muskopf v. Corning Hospital District, 55 Cal.2d 211, 359 P.2d 457, 11 Cal.Rptr. 89 (Cal. 1961), which criticized and rejected the common law application of the doctrine as a defense to liability. While this Court has also questioned the continued vitality of the antiquated concept of sovereign immunity, it has not been presented with the proper opportunity to judicially overturn it. See Maruyama v. MIHA, Civ.No. 82-0066 (D.N.M.I. Decision filed May 24, 1984). This case is no exception. The critical distinction between this case and cases such as Muskopf, a distinction which Gower fails to address, is that the immunity claimed in Muskopf was a judicially recognized common law immunity whereas the defense raised herein is based on legislative enactment. Even the California Supreme Court in Muskopf conceded that the legislature may establish governmental immunity. 11 Cal. Rptr.93. More recently, the same Court again emphasized that while courts will not casually decree immunity, they will honor it where the legislature "has clearly provided for immunity."

AO 72
(Rev.8/82)

Ramos v. Medera, 484 P.2d 93, 98, 94 Cal.Rptr. 421, 426, 4 Cal.3d 685, 698 (198_); see also Peterson v. San Francisco Community College District, 36 Cal.3d 799, 685 P.2d 1193, 205 Cal.Rptr. 842(Cal.1984). Here, the Commonwealth Legislature has quite clearly limited its liability in tort to $100,000 which, if within Legislature's powers, will be honored by this Court. Of course, even though the Legislature has the authority to so limit its liability, that power is nonetheless subject to the limitations imposed by other constitutional provisions, specifically the due process and equal protection clauses.

Gower challenges the statutory damage ceiling as violative of equal protection. Essentially, he argues that the statute arbitrarily and capriciously discriminates against seriously injured tort victims, specifically those with injuries exceeding $100,000. Unfortunately for Gower, this argument has recently been rejected by both the Ninth Circuit Court of Appeals, Hoffman v. United States, 767 F.2d 1431 (9th Cir.1985), and the United States Supreme Court, Fein v. Permanente Medical Group, 38 Cal.3d 137, 695 P.2d 665, 211 Cal.Rptr. 368 (Cal.1985), appeal dismissed, 85-19, October 1985.

At issue in both cases was the constitutionality of California Civil Code §3333.2 which limited recovery of noneconomic damages in medical malpractice actions to $250,000. In Fein, the California Supreme Court addressed constitutional challenges to the legislation by a medical malpractice victim whose judgment of $500,000 for noneconomic damages was reduced to

the statutory limit of $250,000. The Court quickly turned back a due process attack finding it "well established that a plaintiff has no vested property right in a particular measure of damages, and that the Legislature possesses broad authority to modify the scope and nature of such damages." 211 Cal.Rptr. 382, quoting American Bank & Trust Co. v. Community Hospital, 36 Cal.3d 359, 368-369, 204 Cal.Rptr. 671, 683 P.2d 670(Cal.1984). So long as the statute is rationally related to a legitimate state interest, there is no constitutional infirmity; policy determinations will be left to the Legislature. Id.

Fein also raised an equal protection challenge asserting that the legislation impermissibly discriminated within the class of medical malpractice victims, denying a complete recovery only to those plaintiffs with damages exceeding $250,000. The Court found this argument "unavailing" as the statutory classification was rationally related to realistic legislative purposes. 211 Cal.Rptr. 386-387.

On direct appeal to the United States Supreme Court, the matter was dismissed for want of a "substantial federal question." Fein v. Permanente Medical Group, 85-19. Such a dismissal is a decision on the merits and carries with it a stare decisis effect which binds state and lower federal courts. Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975); see 16 C. Wright and A. Miller, Federal Practice and Procedure §4014.

In Hoffman v. United States, supra, the Ninth Circuit

AO 72
(Rev.8/82)

squarely addressed an equal protection challenge to the same California statute. Hoffman brought suit against the United States for the negligent administration of a general anesthetic which caused anoxic brain injury. The trial judge found in favor of Hoffman for $4,179,000; $1,000,000 of that amount was for noneconomic damages. Under the Federal Tort Claims Act, federal courts apply the law of the state wherein the claim arose which necessitated a review of C.C.C.§3333.2. The trial judge entered judgment on the full amount finding §3333.2 unconstitutional.

The Ninth Circuit reversed. Finding no suspect class and no infringement of a fundamental right nor a classification otherwise requiring heightened scrutiny, the panel reviewed the statute under the traditional rational basis test. Utilizing the two-step test set forth in Western & Southern Life Ins. Co. v. State Board of Equalization, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981), the appellate panel looked first to determine whether the challenged · legislation had a legitimate purpose and if so whether it was "reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose". Id. The Ninth Circuit had no difficulty sustaining the statute under this lenient test. "The record clearly supports a finding that the California Legislature had a 'plausible reason' to believe that the limitations on noneconomic recovery would limit the rise in malpractice insurance costs" and thereby avert a perceived impending crisis in the delivery of adequate medical care. Hoffman, 767 F.2d at 1437. Finding such

AO 72
(Rev.8/82)

418

a rational relation to a legitimate state interest, the panel reversed the trial court and upheld the $250,000 limitation.

Gower attempts to overcome the decisions in Fein and Hoffman in two respects. Initially, Gower cites this Court to decisions of other state supreme courts which have struck down similar legislation. However, the cited cases are themselves distinguishable. In Carson v. Mauer, 424 A.2d 825 (N.H.1980), the New Hampshire Supreme Court invalidated a provision substantially similar to the California statute on equal protection grounds. However, the same court declined to similarly invalidate a statute very similar to 7 C.M.C. §2202 which limited the tort liability of governmental units to $50,000. Although concerned with the severity of the limit, the Court found that the "real and vital differences between...governmental units and ...private parties as potential tort defendants" are "sufficient to sustain the legislature's differential treatment of them." 406 A.2d 706-707, citing Cooperrider, The Court, the Legislature, and Governmental Tort Liability in Michigan, 72 Mich.L.Rev. 187, 272 (1973).

Equally of no assistance are the Ohio Supreme Court decisions in Wright v. Central DuPage Hospital, 347 N.E.2d 736 (Ill. 1976) and Simon v. St.Elizabeth Medical Center, 355 N.E.2d 903 (Ohio 1976) as they rely on independent provisions of the Illinois and Ohio state constitutions, respectively.

Secondly, Gower urges that §2202 is distinguishable from C.C.C. §3333.2 in that §2202 not only limits noneconomic

AO 72
(Rev.8/82)

419

damages as did the California statute, but limits all damages including medical expenses and other economic losses. Such a total limitation which has the potential to deny recovery of basic medical expenses has been distinguished from limits on purely noneconomic damages and has been struck down in several jurisdictions. See, e.g., Wright v. Central DuPage Hospital, supra; Simon v. St. Elizabeth Medical Center, 355 N.E.2d 903 (C.P. Ohio 1976); but see, Johnson v. St. Vincent Hospital, 273 Ind. 374, 404 N.E.2d 585, 600-601 (1985)(upholding such limits). And in California, the Supreme Court cited the confinement of the malpractice damages cap to noneconomic damages in support of its Fein decision. 211 Cal.Rptr. at 383-384.

The crucial distinction here is the nature of the limitation. Were the statute at issue applicable to all tort actions against any and all defendants, private and governmental, this Court may deem it necessary to thoroughly scrutinize the limits imposed and carefully analyze their impacts upon different classes of plaintiffs. However, the limitation at issue is in essence a tort claims statute similar to those found in the majority of jurisdictions. When reviewing such a statute, the analysis differs. One starts with the proposition that the state may consent to be sued or may constitutionally withhold consent altogether. It necessarily follows that the governmental body may choose a middle path and condition the consent in a manner which it deems wise to promote sound social policy. Thus, absent is the question whether the body politic has the power at all to

AO 72
(Rev.8/82)

420

limit economic damages, a question which has troubled several state courts with regard to across-the-board damage limits. When the question of the State's ability in the first instance to limit economic damages is removed, the court need only determine whether the line drawn is within constitutional bounds.

█ The $100,000 limit passes constitutional muster. Like the Ninth Circuit panel in Hoffman, this Court will follow the rational basis test to review the statute. The limitation on damages selects no suspect class for differential treatment nor is the right to a specific measure of damages fundamental; as did the Hoffman panel, this Court finds no other factor which triggers heightened scrutiny. Accordingly, the legislation is reviewed to determine whether it has a legitimate purpose which is reasonably promoted by the chosen classification. Hoffman, 767 F.2d at 1436-1437.

The purpose of the legislation is clearly set forth in the legislative history. The legislators sought to "permit redress by private individuals for wrongful government action by granting a limited waiver of sovereign immunity." CNMI H.Rep. S.C.Rep. No.59, 3rd Leg., at 1 (Aug. 4, 1982) However, due to the "formative stage" of the government and the limited available funds, the Legislature reasonably determined that to allow for unconditional redress would risk "exorbitant expense" and consequent government instability. Accordingly, the Legislature sought to strike a compromise whereby it could offer some redress within the bounds which would "reflect[] the realities of the

AO 72
(Rev.8/82)

421

Commonwealth." Id. Based on the amount of pending claims and considering the expected revenues of the government, the $100,000 limit was established. The limit was the result of a rational process which sought to balance the needs of the tort victims with the financial abilities of the Commonwealth. The alternative of providing no avenue of redress, which would be subject to a similar equal protection attack, is certainly less desirable. The $100,000 cap is a rational solution to the problem. There is no constitutional infirmity.

II.

Gower, assuming arguendo the limit to be facially valid, challenges its constitutionality as applied to him. Specifically, he argues that the Legislature cannot make the limit applicable to cases pending at the time of the enactment.

7 C.M.C. § 2207 provides:

> The provisions of the Article[including §2202] shall apply to every action for tort liability which has not been reduced to judgment as of the effective date hereof, regardless of when the action was filed.

Gower filed this action on October 4, 1982; the claim of course was yet to be reduced to judgment as of March 29, 1983, the effective date of the Article. This Court agrees with Gower that the imposition of a limitation on liability, enacted perhaps in response to a pending action and clearly made applicable to an open case, seems harsh; however, Gower has cited no authority, nor has this Court found any case law, which prevents a government from doing just what has been done here.

AO 72
(Rev. 8/82)

422

What authority has the Commonwealth exercised here? Unlike California which exercised its power to define remedies, the Commonwealth has exercised its authority to consent to be sued. In effect it has withdrawn its consent to be liable for an amount over $100,000.[1] Can this revocation of consent apply to pending cases? The courts, state and federal, which have addressed this issue have resoundingly answered this query in the affirmative.

Generally, legislation cannot mandate substantive results in cases pending before the courts. United States v. Brainer, 515 F.Supp. 627, 631 (D.Md.1981), citing United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871); see also L. Tribe, American Constitutional Law 39 (1978). However, "it has been held that the consent of a state to be sued, being voluntary, may be withdrawn by the state whenever it sees fit, even though pending suits are thereby defeated." Oliver American Trading Co. v. Mexico, 5 F.2d 659, 662 (2nd Cir. 1924), citing Beers v. Arkansas, 20 How. 527, 15 L.Ed. 991. This statement of the principle has survived in recent cases. See, e.g., Hospital Association of New York v. Toia, 435 F.Supp. 819, (S.D.N.Y. 1977) (state hospital which was originally required to consent to suit

---

[1] Previously, the Commonwealth's liability was unlimited pursuant to 6 T.T.C. §251(c) which was made applicable to the new government pursuant to Section 505 of the Covenant.

AO 72
(Rev.8/82)

to participate in federal medicaid program may constitutionally withdraw consent even though pending cases affected); Cabell v. California, 67 Cal.2d 150, 430 P.2d 34, 60 Cal.Rptr. 476 (Cal. 1967) Haddenham v. Washington, 87 Wash.2d 145, 550 P.2d 9, 13 (Wash. 1976)(state may revoke consent at any time before judgment rendered). The authority to revoke consent is unquestioned. See Maricopa v. Valley National Bank, 318 U.S. 357, 361, 63 S.Ct. 587, 589 87 L.Ed. 834, 838 (1943)(Douglas, J.) ("the power to withdraw the privilege of suing the United States knows no limitation; Gold Bondholders Protective Council v. United States, 676 F.2d 643 (Ct.Cl. 1982)(authority has been reaffirmed in an unbroken line of Supreme Court cases). Any potential due process impediment is eliminated by a consistent line of decisions, both state and federal, holding that a party has no vested right in a particular cause of action or in a specific remedy. See, e.g.,United States v. Heinszen, 206 U.S. 370, 27 S.Ct. 742 (1906)(case must be determined on the law as it stands not when the suit was brought but when the judgment is rendered); United States v. Standard Oil Co., 21 F.Supp. 645 (S.D.Cal. 1937)(no vested right exists in a measure of compensation); Fein v. Permanente, supra, 211 Cal.Rptr. at 382 (no vested property right in a specific amount of damages); Frost v. California, 247 Cal.App.2d 378, 55 Cal.Rptr. 652 (1966)(action based entirely on statute creates no vested rights); Jefferson Department of Social Services v. D.A.G., 607 P.2d 1004, 1006 (Colo. 1980)("the abolition of an old remedy, or the substitution

AO 72
(Rev.8/82)

424

of a new one [does not] constitute[] the impairment of a vested right... for there is no such thing as a vested right in remedies"). <u>Bailey v. School District</u>, 185 P.810 (Wash. 1919)(right to maintain a tort action is not a vested right in property but a right which depends entirely on statute; thus the statute's repeal destroys no vested rights).

Whether one relies on the principle that there exists no vested right in a remedy or cause of action or on the axiom that there are no limitations to the power to withdraw the privilege of suing the government, the conclusion reached by the vast majority of the courts holds that legislation affecting the remedy of a pending case runs afoul of no constitutional principle. While the result here seems severe considering the amount of Gower's alleged damages, Gower has not persuaded this Court to depart from the enormous body of existing case law.

III.

Gower raises other arguments as to why the limit should not apply to this action. Initially, he attempts to characterize this action as one sounding in contract and not in tort.[2] While Gower is correct in his inference that a physician-patient relationship may be contractual in nature, an action for injury

_____

[2] Pursuant to 7 C.M.C. §2251(b), the Commonwealth has consented to be sued in contract and has not set a limit on its liability.

AO 72
(Rev.8/82)

due to failure to exercise reasonable care is an action in tort for negligence. W. Prosser, Law or Torts, 161-166 (4th.ed. 1971). Gower's complaint is replete with allegations of negligence and devoid of a breach of contract claim. Even his civil cover sheet identifies the action as tort and not contact. This argument is a mere subterfuge and is rejected.

Gower's more challenging argument is that the hospital is operated in the Commonwealth's proprietary capacity and as such does not fall within the government's sovereign immunity. Gower relies on the distinction created in municipal law whereby a sovereign's immunity has been said to extend only to those instances in which the government acts in its sovereign capacity. The corollary of this proposition is that when the government acts in a proprietary capacity, it sheds its sovereign immunity and places itself on equal footing with other persons or business enterprises. See Civil Actions Against State Government, §2.36 (Shepard's/McGraw-Hill, 1982).

The governmental/proprietary distinction is an awkward doctrine which has been extensively criticized. Justice Frankfurter, writing for the majority in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), addressed an attempt by the United States to use the doctrine to its advantage:

> [T]he Government...would thus push the courts into the "non-governmental"-"governmental" quagmire that has long plagued the law of municipal corporations. A comparative study of the forty-eight States will disclose an

> irreconcilable conflict. More than that, the decisions in each of the States are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound.

76 S.Ct. at 124. Thus, it appears to be the modern trend to respect the legislature's authority to control the entire field. Where the legislature does act regarding the nature and bounds of its immunity, the court will not interfere; conversely, where it does not act, or acts in a piecemeal fashion, the court will develop appropriate doctrines to ensure justice. See Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21, 27(Kan. 1969); see also Cabell v. California, 67 Cal.2d 150, 430 P.2d 34, 36, 60 Cal.Rptr. 476, 478 (Cal. 1976)("No sound basis exists for differentiating..., with attendant inequality, between causes arising out of so called 'proprietary' as distinguished from 'governmental' activities"). Here the Legislature has covered the entire field of tort liability and this Court will not attempt to side step the clear intent by adoption of this "inherently unsound" distinction.

IV.

In summary, the Court holds that the Commonwealth Legislature has the authority to limit its liability when it consents to be sued in tort. Although the exercise of this power must remain within the bounds of due process and equal protection, the Court finds no constitutional infirmity with 7 C.M.C. §2202. Gower's other arguments are meritless.

AO 72
(Rev.8/82)

Although the Court upholds the liability limitation, the Legislature should not feel that it is "off the hook." The balance it has struck, while constitutionally sound, nevertheless takes a heavy toll on those persons seriously injured by the tortious acts of Commonwealth employees. The deference shown to legislative decisions such as those made here places a significant legal and social burden on the elected representatives to exercise extreme care in the continuous review of sensitive legislation of this nature and to revise such public laws where changed circumstances so require. The argument advanced that the Commonwealth is young and unable to shoulder such economic burdens, while successful here, will not indefinitely protect such statutes from successful constitutional challenges. The Legislature should work to seek solutions, whether through procurement of insurance or otherwise, to duly compensate those persons injured by the acts of government employees.

The Commonwealth's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

Dec. 31, 1985
_____
Date

_____
JUDGE ALFRED LAURETA