**ASIAN AMERICAN BUSINESS GROUP, Plaintiff,**

v.

**CITY OF POMONA, a City of the State of California; and A.J. Wilson, solely in his official capacity as City Administrator, Defendants.**

**No. CV 89–0828–RMT(Sx).**

United States District Court, C.D. California.

July 14, 1989.

John S. Ward, Walker, Wright, Tyler & Ward, Los Angeles, Cal., and Elizabeth N. Brancart, Pomona, Cal., for plaintiff.

Douglas C. Purdy and Alan H. Yamada, Morris, Polich & Purdy, Los Angeles, Cal., and Patrick J. Sampson, City Atty., Pomona, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TAKASUGI, District Judge.

This matter has come before the court on the motion by defendants to dismiss and on the cross-motion by plaintiff for summary judgment. Having considered the pleadings and other documents filed herein the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Defendant City of Pomona ("City") has passed the following ordinance:

On premises signs of commercial or manufacturing establishments which have advertising copy in foreign alphabetical characters shall devote at least one half of the sign area to advertising copy in English alphabetical characters. Commercial or manufacturing establishments which have on premises signs with foreign alphabetical characters shall also display in Arabic numerals their address in figures not less than three and one half inches in height.

2. Plaintiff Asian American Business Group alleges that it is a nonprofit association dedicated to the preservation of freedom of speech of Asian Americans in general and its members in particular.

3. In its complaint, plaintiff alleges the ordinance violates the following constitutional rights or federal statute:

First claim for relief: freedom of speech under the first amendment, U.S. Constitution;

Second claim for relief: freedom of association under the first amendment, U.S. Constitution;

Third claim for relief: due process under the fourteenth amendment, U.S. Constitution;

Fourth claim for relief: equal protection under the fourteenth amendment, U.S. Constitution;

Fifth claim for relief: 42 U.S.C. § 1981.

4. As to the fifth claim, issues of fact remain, including issues as to whether there was intent to discriminate.

**1330**

Any finding of fact which may be deemed a conclusion of law is incorporated into the Conclusions of Law section below, and any conclusion of law which may be deemed a finding of fact is incorporated into the Findings of Fact section above.

## CONCLUSIONS OF LAW

1. This court has subject matter jurisdiction. 28 U.S.C. § 1331.

### FREEDOM OF SPEECH

■ 2. By requiring one half of the space of a foreign alphabet sign to be devoted to English alphabetical characters, the ordinance regulates the cultural expression of the sign owner. Since the language used is an expression of national origin, culture and ethnicity, regulation of the sign language is a regulation of content.

3. A person's primary language is an important part of and flows from his/her national origin. Although not written in the context of a first amendment claim, *Olagues v. Russoniello*, 797 F.2d 1511, 1520–21 (9th Cir.1986) (en banc), *vacated on ground of mootness*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987); and *Gutierrez v. Municipal Court of the Southeast Judicial District*, 838 F.2d 1031, 1039–40 (9th Cir.1988), *vacated on ground of mootness*, —— U.S. ——, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989) effectively addressed language regulation and its relationship to national origin. Although this court does not rely on these cases as precedent, this court does agree with their rationale and analysis.

■ 4. Choice of language is a form of expression as real as the textual message conveyed. It is an expression of culture.

■ 5. Speech is not commercial merely because it proposes a transaction or because there is an economic motivation. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67, 103 S.Ct. 2875, 2880, 77 L.Ed.2d 469 (1982).

■ 6. Although the signs regulated by the ordinance have a commercial aspect to them, it is not that aspect that the ordinance regulates. It is the aspect of expression of culture and national origin that is being regulated.

7. As a regulation of noncommercial speech, the ordinance must meet the standard of strict scrutiny—it must serve a compelling governmental interest and be narrowly tailored to meet the interest. *Pacific Gas & Electric v. California P.U.C.*, 475 U.S. 1, 19, 106 S.Ct. 903, 913, 89 L.Ed.2d 1 (1986).

■ 8. The governmental interest cited by defendant City is the ready identification of commercial structures to facilitate the reporting of emergencies. Defendant City argues that if a person telephoning the police or fire department to report an emergency cannot read the sign identifying the location of the emergency, the response will be delayed. This is a compelling state interest.

9. It appears that the ordinance is not narrowly tailored to further the defendant City's stated interest. An undisputed portion of the ordinance requires that addresses be posted in Arabic numerals. Identification by street address would appear to be the most expedient way in which to report the location of an emergency. Requiring "advertising copy in English alphabetical characters" would not necessarily insure the posting of a sign that would be helpful in reporting the location.

10. Defendants argue, without providing any supporting evidence, that the "advertising copy" referred to in the preceding paragraph only requires structure identification. Even if this limitation applied to the ordinance, it does not result in a properly tailored ordinance: According to a declaration provided by defendants, the defendant City does not require any business or commercial establishment to have a sign on the premises stating the name of the establishment. If that is the case and if, as defendants argue, street address is insufficient identification for reporting a location in an emergency, it is very curious that defendant City has chosen to require only establishments having foreign alphabet signs to post a sign naming their buildings. Such a limitation renders the ordinance

equally limited in its effectiveness in furthering the stated government interest and, as such, casts suspicion on the genuineness of said stated interest.

11. The ordinance fails the "narrowly tailored" test for another reason: It takes one half of all signs written in foreign characters without regard to the size and location of the sign or the amount of space necessary to identify the building. There is no reason suggested for seizing such a large portion of the signs nor an explanation provided as to why the ordinance was not drafted to limit the space taken to that necessary to identify the building.

12. Assuming *arguendo* that the ordinance regulates commercial speech, the applicable test would be whether a substantial government interest is directly advanced by the ordinance and whether it is no more extensive than necessary to serve that interest. *Central Hudson Gas v. Public Service Commission*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Recognizing that this is lower than the "narrowly tailored" standard, the substantial interest requirement is met and the ordinance does directly advance it. However, because the ordinance takes one half of the sign space regardless of sign size and area necessary to identify the building, it is clearly more extensive than necessary to serve the stated interest.

13. Whether considered a regulation of commercial or noncommercial speech, the ordinance violates the freedom of speech.

### FREEDOM OF ASSOCIATION

14. Plaintiff contends that the ordinance unjustly restricts the freedom of association by hobbling their members' ability to communicate with their language groups (freedom of private association). Plaintiff further contends that the ordinance infringes the right to associate in pursuit of political, social, cultural, etc. ends (freedom of expressive association). These claims simply reiterate the speech claims; they do not implicate association claims. Motion to dismiss should be granted.

### DUE PROCESS

■ 15. Laws restricting speech are given the highest scrutiny for vagueness. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

16. "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (footnote omitted).

17. "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" ... than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (footnotes omitted).

■ 18. The ordinance applies to signs having "advertising copy in foreign alphabetical characters" and requires "advertising copy in English alphabetical characters". However, "advertising copy" is not defined. Elsewhere in the Pomona City code, the term "advertising" is used in commercial and noncommercial contexts and appears, essentially, to be synonymous to "promoting."

19. Without explanation or evidentiary support, defendants assert in their legal brief that "the Ordinance only applies to the name of a business or commercial establishment ..." However, there is nothing to indicate that this limitation is binding on defendant City. Nothing indicates that defendants' brief writers have the authority to make binding interpretations of local ordinances. See, *Hynes v. Mayor of Oradell*, 425 U.S. 610, 622–23 n. 6, 96 S.Ct. 1755, 1761–62 n. 6, 48 L.Ed.2d 243 (1976).

20. The federal courts lack the authority to cure vagueness problems by narrowing a local ordinance. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 369, 28 L.Ed.2d 822 (1971).

21. Use of the term "advertising copy" in the ordinance fails to provide reasonable notice as to what it requires and, as such, is unconstitutionally vague.

## EQUAL PROTECTION

22. Although an equal protection claim must generally show intent to discriminate, a showing of intent is unnecessary if the law has an overtly discriminatory classification on its face. *Wayte v. United States,* 470 U.S. 598, 608 n. 10, 105 S.Ct. 1524, 1531 n. 10, 84 L.Ed.2d 547 (1985). The subject ordinance expressly discriminates against sign owners who use foreign alphabetical characters in their signs. As noted *supra,* the use of foreign languages is clearly an expression of national origin. As such, the ordinance overtly discriminates on the basis of national origin.

23. There are two independent reasons for applying the strict scrutiny test to this equal protection claim: First, the ordinance burdens the freedom of expression, a fundamental interest, in that it seizes one half of the sign space; and second, the ordinance discriminates based on a suspect classification—national origin. *Hoffman v. United States,* 767 F.2d 1431, 1434–35 (9th Cir.1985). Of course the ordinance does not expressly refer to national origin; instead it refers to use of foreign alphabetical characters. If this were not sufficient to label it national origin discrimination and, hence, a suspect classification triggering the application of strict scrutiny, cities could avoid such heightened scrutiny by passing discriminatory laws that merely restrict those who speak foreign languages.

24. "To withstand strict scrutiny a statute must be precisely tailored to serve a compelling state interest." *Hoffman v. United States,* 767 F.2d 1431, 1435 (9th Cir.1985).

25. This is the same test as the "narrowly tailored" test applied to plaintiff's speech claim and yields the same result—a finding of unconstitutionality.

26. Furthermore, focusing on the distinction/discrimination made by the ordinance and examining its relationship to the stated government interest results in the conclusion that although the distinction/discrimination (singling out business establishments having foreign characters on their signs) may have a rational relationship to the stated interest (facilitating the reporting of emergencies), that relationship is not strong enough to justify the discrimination where, as here, there are many other nondiscriminatory ways to more effectively further the stated interest, such as requiring all buildings to having identifying signs.

### 42 U.S.C. § 1981

27. In order to prevail on a claim under 42 U.S.C. § 1981, a plaintiff must show discriminatory intent by the defendant. *General Bldg. Contractors Assn. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

## ORDER RE MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

This matter having come before the court on the motion by defendants to dismiss and on the cross-motion by plaintiff for summary judgment, and this court having considered the pleadings and other documents filed herein and having filed findings of fact and conclusions of law concurrently herewith,

IT IS ORDERED that the motion by defendants to dismiss is granted as to the second claim (freedom of association) and denied as to all other claims. The motion by plaintiffs for summary judgment is denied as to the fifth claim (42 U.S.C. § 1981); the motion for summary judgment is granted on the first claim (freedom of speech), the third claim (due process) and the fourth claim (equal protection) as to declaratory and injunctive relief as follows:

(1) The court hereby declares that the Ordinance violates the first amendment

rights of freedom of speech, is void for vagueness and violates the Due Process Clause of the fourteenth amendment, and violates the Equal Protection Clause of the fourteenth amendment; and

(2) Defendants are hereby enjoined from enforcing the Ordinance.