UNITED STATES of America,
Plaintiff–Appellee,

v.

**Daryl NUESCA, Defendant–Appellant.**

**Crim. No. 89–01349–DAE–01.**

United States District Court,
D. Hawaii.

Oct. 25, 1990.

Daniel A. Bent, U.S. Atty., Stuart L. Gasner, Asst. U.S. Atty., U.S. Attys. Office, Honolulu, Hawaii, for plaintiff-appellee.

Hayden Aluli, Asst. Federal Public Defender, Federal Public Defenders Office, Honolulu, Hawaii, for defendant-appellant.

### DECISION AFFIRMING APPELLANT'S CONVICTION

DAVID A. EZRA, District Judge.

Appellant Daryl Nuesca ("Nuesca") was convicted of the misdemeanor of taking two green sea turtles in violation of 16 U.S.C. §§ 1538(a)(1)(G) and 1540(b) of the Endangered Species Act. Nuesca appeals his conviction pursuant to Rule 7 of the Rules of Procedure for the Trial of Misdemeanors Before United States Magistrates, 18 U.S.C. § 3402, and Local Rules of Practice for the United States District Court for the District of Hawaii 300-2 and 404-4. The court, having reviewed the briefs submitted in support of and in opposition to the appeal, and being fully apprised as to the premises therein, affirms judgment entered on January 4, 1990.

### BACKGROUND

On November 29, 1989, Nuesca was charged in a Second Superseding Information with violation of 16 U.S.C. §§ 1538(a)(1)(G) and 1540(b) of the Endangered Species Act. In particular, Nuesca was charged with the taking of two green sea turtles, which have been listed as "threatened" pursuant to 16 U.S.C. § 1533(c).

After a jury trial before Magistrate Daral G. Conklin, Nuesca was found guilty of Count 1 of the Second Superseding Information, and the magistrate filed a judgment in conformity with the verdict on January 4, 1990. Nuesca was sentenced to five (5) days' imprisonment, and the sentence was stayed pending appeal.

Nuesca appeals his conviction on two grounds, namely, (1) that the Endangered Species Act does not prohibit the possession of a green sea turtle by a native Hawaiian, and (2) that the Act's exemption for native Alaskans violates equal protection. Prior to trial, Nuesca raised both these arguments in a motion to dismiss the information, and the motion was denied.

### DISCUSSION

#### A. Standard of Review

After conviction, matters of law are reviewed *de novo*. *United States v. Arrellano*, 812 F.2d 1209 (9th Cir.1987); *United States v. Miller*, 771 F.2d 1219 (9th Cir. 1985). Nuesca's arguments regarding the statutory interpretation and constitutionality of the Endangered Species Act involve matters of law; therefore, this court will review his arguments *de novo*.

#### B. The Endangered Species Act Prohibits Nuesca From Taking a Green Sea Turtle

Title 16 U.S.C. § 1533(a)(1) authorizes the Secretary of the Interior to list species as either "endangered" or "threatened." If a species is "endangered," the Endangered Species Act prohibits "any person subject to the jurisdiction of the United States" from importing, exporting, taking, possessing, selling, offering for sale, delivering, carrying, transporting, or shipping such species. *See* 16 U.S.C. § 1538(a)(1)(A)–(F). If a species is "threatened," the Act provides:

[I]t is unlawful for any person subject to the jurisdiction of the United States to ... violate any regulation pertaining to such species or to any *threatened* species of fish or wildlife listed pursuant to section 1533 of this title and promulgated by the Secretary pursuant to authority provided by this chapter.

(Emphasis added.) The Code of Federal Regulations, in turn, prohibits the taking of green sea turtles. *See* 50 C.F.R. §§ 227.71 and 227.4(a). Title 16 U.S.C. § 1540(b) provides criminal penalties for violations of the Endangered Species Act.

Nuesca contends that native Hawaiians hunt green sea turtles for subsistence purposes and therefore native Hawaiians have "aboriginal rights" to continue this practice. He argues that there is a trust relationship between native Hawaiians and the federal government, and that based on this trust relationship, the federal government may not abrogate aboriginal rights absent "clear and plain" intent. Finally, Nuesca argues that the Endangered Species Act does not express a "clear and plain" intent to abrogate these rights.[1]

Nuesca contends that because there is a legally recognized trust relationship between the federal government and American Indians, there should likewise be a trust relationship between the federal government and native Hawaiians. He cites *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831), in which Justice Marshall described American Indian tribes as "domestic dependent nations [whose] relation to the United States resembles that of a ward to his guardian." Nuesca suggests there is no reason to distinguish between American Indian tribes and native Hawaiians because "both groups saw their governments collapse and their lands taken away in the heyday of nineteenth century American imperialism." Appellant's Brief, at 4.

Nuesca also cites *United States v. Dion*, in which the United States Supreme Court recognized the right of the Yankton Sioux Tribe to shoot and hunt bald eagles but held that right had been abrogated by the Bald Eagle Protection Act. 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1985). Nuesca attempts to draw a parallel between his own situation and that of the Yankton Sioux Tribe. He claims that he, like the Sioux, has an "aboriginal" right to hunt an endangered species,[2] a right that can only be abrogated by the "clear and plain intent" of Congress.

■ Nuesca's argument lacks merit because he fails to recognize that the Yankton Sioux Tribe in *Dion* had a *treaty* right to hunt bald eagles. "[M]embers of the Yankton Sioux Tribe have a *treaty* right to hunt bald and golden eagles within the Yankton Reservation for noncommercial purposes." 476 U.S. at 736, 106 S.Ct. at 2218–19.[3] It was the conflict between this *treaty* right and the Bald Eagle Protection Act that the court addressed in *Dion*. Absent an explicit treaty or statutory right to take green sea turtles, Nuesca can point to no legally recognized "aboriginal right" to take green sea turtles.

■ If Congress had intended to grant native Hawaiians an exception to the Endangered Species Act to permit the taking of green sea turtles, it would have passed a statute specifically granting this right.[4] This court has no power to fashion such a statute where none exists. Such action would be a violation of the separation of powers doctrine. "[T]he authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress

---

1. With respect to the argument that the Endangered Species Act does not express a "clear and plain" intent to abrogate Nuesca's "right" to take green sea turtles, *see* note 4, *infra*.

2. The green sea turtle is technically listed as "threatened" under the Endangered Species Act.

3. In fact, Dion did *not* challenge his convictions for hunting bald eagles for *commercial* purposes and for *selling* bald eagles because these rights were *not* included in the treaty. 476 U.S. at 735 n. 1, 736 n. 2, 106 S.Ct. at 2218 n. 1, 2219 n. 2.

4. *See, e.g.*, 16 U.S.C. § 1539, granting an exception to the Endangered Species Act for native Alaskans to take "any endangered species or threatened species ... if such taking is primarily for subsistence purposes."

has decided not to adopt." *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981).

Nuesca next argues that native Hawaiians should be considered "American Indians" and cites *Pence v. Kleppe* and *United States v. Native Village of Unalakleet* in support of this argument. *See* Appellant's Brief, at 5. The court in *Pence* held that the word "Indians" as used in Alaskan land allotment statutes included Indians, Aleuts and Eskimos. 529 F.2d 135 (9th Cir.1976). The court in *Unalakleet* held that the term "American Indian" as used in the Indian Claims Commission Act included Eskimos and Aleuts. 411 F.2d 1255, 188 Ct.Cl. 1 (1969). In the present case, Nuesca cites no *statute* granting "American Indians" the right to take green sea turtles. As discussed below, the Endangered Species Act provides an exception for "Alaska natives." To construe "Alaska natives" to include "native Hawaiians," however, goes far beyond the interpretations engaged in by the *Pence* and *Unalakleet* courts and would amount to judicial legislation.

Finally, the court notes that the Endangered Species Act prohibits "any person subject to the jurisdiction of the United States" from taking a threatened species. Nuesca does not contest that he is "subject to the jurisdiction of the United States." Hence, Nuesca clearly falls within the proscriptions of the statute.[5]

C. *The Exception for Native Alaskans Does Not Violate Equal Protection*

■ The Endangered Species Act exempts "Alaska natives" from its prohibitions. *See* 16 U.S.C. § 1539(e). Nuesca contends that Congress' failure to include native Hawaiians in this exemption is a violation of equal protection.

Title 16 U.S.C. § 1539(e)(1) provides:
[T]he provisions of this chapter shall not apply with respect to the taking of any endangered species or threatened species

... by ... any Indian, Aleut, or Eskimo who is an Alaskan Native who resides in Alaska; or any non-native permanent resident of an Alaskan native village ... *if such taking is primarily for subsistence purposes.*

(Emphasis added.) Nuesca argues that native Alaskans and native Hawaiians are "similarly circumstanced" and therefore that they should be treated alike under the statute. Nuesca states that "both are indigenous people of the United States" and that "[b]oth surrendered vast amounts of land and the right of self-determination upon American annexation."

The similarities cited by Nuesca are not the similarities that would be relevant to an exception to the Endangered Species Act. Congress provided the exception for native Alaskans because native Alaskans depend upon hunting certain endangered species for subsistence purposes. In fact, the exception is not unlimited; the Secretary of the Interior may impose restrictions upon native Alaskans if he determines that the takings would "materially and negatively affect ... the threatened or endangered species." 16 U.S.C. § 1539(e)(4).

Nuesca has made no showing that native Hawaiians, as a group, depend upon the hunting of green sea turtles for subsistence. Nuesca merely claims that because the green sea turtle was "going to be used for food," it was taken for subsistence purposes. The fact that Nuesca planned to eat the sea turtles does not equate with a showing that native Hawaiians depend on the green sea turtle for subsistence. In fact, the National Marine Fisheries Service (NMFS) has specifically considered providing a subsistence exception to the prohibition on taking green sea turtles for native Hawaiians and has rejected this proposition. *See* Fed.Reg. Vol. 50, No. 2, at 278–79. The NMFS has, however, provided such an exception for residents of the

---

**5.** Nuesca argues that Congress' intention to abrogate his "right" to take green sea turtles must be "clear and plain." He cites *Dion,* which held that Congress' intention to abrogate Indian treaty rights must be clear and plain. Because no *treaty rights* are involved here, Nuesca's reliance on *Dion* is misplaced.

Trust Territory of the Pacific Islands. *See* 50 C.F.R. § 227.72(f).[6]

The exception provided in 16 U.S.C. § 1539 withstands scrutiny under the "rational basis" test. In *Washington v. Confederated Bands and Tribes*, the United States Supreme Court held that federal legislation singling out tribal Indians would be reviewed for an equal protection violation under the "rational basis" test. 439 U.S. 463, 500–01, 99 S.Ct. 740, 761–62, 58 L.Ed.2d 740 (1979).[7] "It is settled that 'the unique legal status of Indian tribes under federal law' permits the Federal Government to enact legislation singling out tribal Indians, legislation that might otherwise be constitutionally offensive." 439 U.S. at 500–01, 99 S.Ct. at 761, *quoting Morton v. Mancari,* 417 U.S. 535, 551–52, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). The exception involved in the present case is legislation "singling out tribal Indians" to the extent that it provides an exception for "any Indian, Aleut, or Eskimo who is an Alaskan Native."

In order to satisfy the "rational basis" test, all that is required is some reasonably conceivable statement of facts which would justify the classification. *Hoffman v. United States,* 767 F.2d 1431, 1436–37 (9th Cir.1985). Reviewing courts should " 'seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.' " *Id.* at 1436, *quoting Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

This test is satisfied in the present case because it was rational for Congress to conclude that native Alaskans relied on certain endangered or threatened species for subsistence purposes, whereas native Hawaiians do not. Native Hawaiians do not live in areas so remote that access to conventional food supplies is virtually nonexistent. As noted above, the NMFS has conducted exhaustive review of public comments suggesting that a subsistence exception may be warranted for native Hawaiians with respect to the green sea turtle, and has *rejected* this proposition.

Section 1539(e) also provides an exception for "any non-native permanent resident of an Alaskan native village...." This prong of the exception does not "single out tribal Indians." The "rational basis" test still applies to this prong of the exception, however, because it does not classify on the basis of race, ancestry, or alienage. *Hoffman,* 767 F.2d at 1434–35 (in cases not involving a suspect classification or a fundamental right, the rational basis standard applies). This prong provides that *any* non-native permanent resident of an Alaskan native village, of *any* race, will fall under the subsistence exception.[8] For the reasons discussed above, this prong of the exception similarly satisfies the rational basis test.[9]

## CONCLUSION

For the foregoing reasons, the court hereby affirms appellant's conviction.

IT IS SO ORDERED.

---

**6.** The exception applies only if the taking is "customary, traditional and necessary for the sustenance of such resident and his immediate family." 50 C.F.R. § 227.72(f).

**7.** The legislation at issue in *Confederated Bands* was a Washington state statute enacted "in response to a federal measure explicitly designed to readjust the allocation of jurisdiction over Indians." 439 U.S. at 501, 99 S.Ct. at 761. Therefore, the court applies the rational basis standard to the state legislation, even though states "do not enjoy [the] same unique relationship with Indians" as the federal government does. *Id.*

**8.** Thus, if Nuesca were a permanent resident of an Alaskan native village, he would fall under this exception.

**9.** The court notes that even if the strict scrutiny standard were applied, the legislation would withstand an equal protection challenge. The exception for native Alaskans is extremely narrowly tailored. It provides an exception *only* where a taking is for "subsistence purposes." Further, as noted above, the Secretary has the authority to impose further restrictions when, in his opinion, "such taking[s] materially and negatively affect ... the threatened or endangered species." Finally, any taking under this exception "may not be accomplished in a wasteful manner." 16 U.S.C. § 1539(e)(2).