Andrew John WALKER, Plaintiff–
Appellant–Cross–Appellee,

v.

George W. SUMNER, et al., Defendants–
Appellees–Cross–Appellants.

Nos. 92–15666, 92–15737.

United States Court of Appeals,
Ninth Circuit.

Submitted July 15, 1993.*

Decided Jan. 28, 1994.

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34–4.

Andrew Walker, Marion, IL, Pro Per, for the plaintiff-appellant.

John E. Simons, Deputy Attorney General, Carson City, NV, for the defendants-appellants.

Before: WALLACE, Chief Judge; NELSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are called upon to consider unusual issues surrounding an inmate's claim that he was placed into disciplinary segregation without a hearing in violation of his right to procedural due process.

I

Walker is a federal prisoner who at the time of the events underlying this lawsuit was housed at Nevada State Prison ("NSP") pursuant to a reciprocal contract with federal authorities. On July 26, 1984, during a routine shakedown, Correction Officer Gurries found in Walker's cell a knife that had apparently been made inside the prison. Walker contends that the knife was planted in his cell by Gurries.

After the knife was found, Walker was immediately removed from the general prison population and placed in segregated housing. The prison officials contend that he was placed in *administrative* segregation because allowing him to remain in the general prison population posed a great security risk; Walker contends that he was placed in *disciplinary* segregation as punishment for the underlying offense.

Sometime within a few days after the transfer,[1] Walker was given written notice that he was charged with a disciplinary violation. At that time, the charges against him were explained by a member of the classification committee and he was told that an attorney would be appointed for him. It is unclear why he was told this; the prison's regulations do not allow inmates to be represented by counsel in disciplinary hearings, nor do they provide that counsel will be appointed to help an inmate prepare his defense. Walker informed the classification committee that he intended to call two witnesses at his disciplinary hearing, a corrections officer and an inmate.

Thirty-two days after his placement into segregated housing, a disciplinary hearing was held and Walker was found guilty of the charges against him. Walker was not present at the hearing. The members of the disciplinary committee contend that Walker waived his right to be present; Walker claims that he was not given the opportunity to waive knowingly the right to attend the hearing and to present a defense. According to Walker, the day the hearing was held, he was removed from his cell and taken to the

---

1. The dates on the forms in the record do not correspond to either Walker's or the prison officials' versions of the events.

prison's rotunda by Officer Benedetti, a member of the disciplinary committee. Walker contends that Benedetti asked him if he wished to have his disciplinary hearing that morning and that he replied that he was waiting for an attorney to be appointed for him as was promised. Walker also contends that the prison's rotunda was not set up for a hearing and that Benedetti had refused to allow him to call witnesses.

Walker was sentenced to 180 days in disciplinary segregation, but was given credit for the thirty-two days that he had spent in administrative segregation. Although the official classification of his confinement changed from non-punitive administrative segregation to punitive disciplinary segregation, he was not moved to a different cell after sentencing.

While serving his time in disciplinary segregation, Walker was sent to Illinois to attend a trial. Upon return, he was placed back in disciplinary segregation but he apparently was not given a full issue of clothing. In addition, Walker contends that his boots were not returned to him.

On August 1, 1985, Walker, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against several prison officials and corrections officers (collectively "prison officials"). The complaint alleged that the prison officials had violated Walker's due process rights by failing to afford him an adequate disciplinary hearing and by placing him in disciplinary segregation before his hearing; had violated his Eighth Amendment rights by failing to provide him with adequate clothing, exercise and medical care; and had discriminated against him by not giving him sugar during meals.

Defendant Housewright was not served; the claims against him were dismissed without prejudice.

Upon recommendation of the magistrate judge, the district court granted summary judgment in favor of Walker on his claim that his right to procedural due process had been violated because he had been placed in disciplinary segregation before his hearing. The court granted summary judgment in favor of the prison officials on all other claims.

A trial was held on the issue of damages. The logistics of the trial were complicated by the fact that on January 20, 1986, Walker had been transferred to a federal prison in Marion, Illinois. The district court concluded that the expense and inconvenience of having Walker transported back to Nevada for the trial outweighed the need for Walker in the courtroom, and the court concluded that the best solution would be to have Walker appear by telephone. Both Walker and the prison officials objected to this procedure. After trial, the district court found that only defendants Helling and Bates, two members of the classification committee, had been personally involved in the events at issue here, and the court awarded Walker $800 in damages against them. The court entered judgment dismissing the claims against the remaining defendants.

Walker appeals, raising several issues. He argues that the district court erred in granting summary judgment in favor of the prison officials on his claims that his disciplinary hearing violated due process and that he was denied adequate clothing. He also argues that the court erred in dismissing Housewright; in refusing to allow Walker to be present at trial; in refusing to order an inmate to be transferred so that Walker could call him as a witness; and in failing to order the prison officials to comply with a document request.

Helling and Bates cross appeal, arguing that the district court erred in permitting Walker to testify by telephone; in concluding that the transfer into segregated housing gave rise to a constitutional violation; in determining liability at the summary judgment stage; in awarding more than nominal damages; and in finding that they were personally involved in the violation of Walker's constitutional rights. Helling and Bates also contend that they were denied a fair trial.

## II

We first consider issues raised in Walker's appeal.

### A

■ Walker contends that the district court improperly granted summary judgment

in favor of the prison officials on his claim that his disciplinary hearing violated his right to due process.[2]

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. In analyzing a procedural due process claim, a court must first determine whether the claimant has been deprived of a liberty or property interest protected by the Constitution; if so, the court must determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted).

Here, Walker contends that he had a liberty interest in not being arbitrarily placed in disciplinary segregation. *See Conner v. Sakai,* 994 F.2d 1408, 1411 (9th Cir. 1993). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466–67, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The Due Process Clause itself does not give rise to a liberty interest in remaining in a general prison cell, *id.* at 466, 103 S.Ct. at 868; thus, we must determine whether Nevada state law gives rise to such an interest. The inquiry is not limited to an analysis of statutory law; rather, "prison regulations and policies can create liberty interests protected by the Fourteenth Amendment." *Smith v. Sumner,* 994 F.2d 1401, 1405 (9th Cir.1993).

"A state law or prison regulation creates a liberty interest if it places 'substantive limitations on official discretion.'" *Id.* (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)). "Specifically, a state creates a liberty interest by both (1) establishing ' "substantive predicates" to govern official decisionmaking,' and (2) using ' "explicitly mandatory language," i.e., specific directives to the decisionmaker that if the regulations' substantive predicates

are present, a particular outcome must follow.'" *Id.* (quoting *Thompson,* 490 U.S. at 462–63, 109 S.Ct. at 1910). The Nevada Department of Prisons Code of Penal Discipline in effect at the time of Walker's offense contains a detailed list of substantive offenses for which punishment can be imposed. Further, the code contains mandatory provisions requiring the prison to provide notice and a hearing to an inmate accused of a substantive offense. Finally, the code imposes detailed requirements on the hearing process itself, and carefully delineates the allowable punishment for each class of offense. Code of Penal Discipline, Notice, Offenses § C, Summary Proceedings and Hearings § B, Disciplinary Action § C. In light of the requirement that notice and hearing be provided before punishment can be imposed, we conclude that Nevada law creates a liberty interest for inmates to remain free from arbitrary placement into disciplinary segregation.

Next, we must determine whether Walker was afforded sufficient process before being confined in disciplinary segregation. *Conner,* at 1410. "Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The Supreme Court in *Wolff* spelled out the minimum procedural protections that the Due Process Clause requires when substantial liberty interests are being deprived in the prison setting; we have subsequently held that the *Wolff* requirements must be met in the disciplinary segregation context. *See Conner,* at 1410–1412; *see also Wolff,* 418 U.S. at 571–72 n. 19, 94 S.Ct. at 2982 n. 19 (due process requires the same procedural protection when solitary confinement is at issue).

Here, the protections provided to inmates by the Nevada Department of Prisons Code of Penal Discipline are more extensive than those mandated by *Wolff.* We have

---

**2.** Walker had raised two independent due process claims. The district court granted summary judgment in Walker's favor on the due process claim that he was placed in disciplinary segrega-

tion before the hearing was held, but granted summary judgment in favor of the prison officials on the claim that his hearing was deficient.

never expressly considered whether the Due Process Clause requires the prison to comply with its own, more generous procedures once they are established. *See Conner*, at 1410 (assuming arguendo that state administrative regulations supply additional process due to inmates and that inmates may sue in federal court to enforce such regulations); *compare id. with Bostic v. Carlson*, 884 F.2d 1267, 1270 (9th Cir.1989) (prison's failure to meet its own guideline requiring a hearing to be held within eight days of charge would not alone constitute denial of due process). The First Circuit in *Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir.1984), however, held that "if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny." The First Circuit's approach is consistent with that of the Supreme Court in *Hewitt* and for this reason we adopt it today. In light of *Rogers* and *Hewitt*, we need not consider whether the prison complied with its own regulations. Walker's right to due process was violated only if he was not provided with process sufficient to meet the *Wolff* standard.

*Wolff* established five procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2979. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.*, 418 U.S. at 566, 94 S.Ct. at 2979. Fifth, "[w]here an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or ... to have adequate substitute aid ... from the staff or from a[n] ... inmate designated by the staff." *Id.* at 570, 94 S.Ct. at 2982. The Court specifically held that the Due Process Clause does not require that prisons allow inmates to cross-examine their accusers, *id.* at 567–68, 94 S.Ct. at 2980–81, nor does it give rise to a right to counsel in the proceedings, *id.* at 569–70, 94 S.Ct. at 2981–82.

Only the fourth requirement is at issue here. Walker received written notice of the charges, had more than a month to prepare his defense, was provided with a statement of reasons for the punishment imposed, and was not entitled under the Due Process Clause to an assistant because his case was not complex. The gravamen of Walker's complaint is that he was denied the opportunity to present a defense because the hearing was held in his absence. The "Summary of Disciplinary Hearing" prepared by the disciplinary committee alleges: "Walker was [sic] explained to him by this committee that this was a administrative hearing. Walker stated he refused disciplinary hearing until there was an attorney present. He was offered a law clerk which he refused. At this time he was asked if he was refusing this disciplinary hearing, which he stated yes." Walker, on the other hand, contends that he was *asked* whether he wanted a hearing on the day in question, implying that he was given a choice as to what day the hearing was to be held. According to Walker, he responded that he was not prepared for a hearing because he had not been appointed an attorney or a staff representative as had been promised to him. He alleges that he was never informed that a hearing would be held in his absence. He further contends that he never *waived* the right to be present at the hearing, and that in fact, he did not believe a hearing could be held at that time because the rotunda was not set up for a hearing. Even viewing the evidence in the light most favorable to Walker, Walker's case is very weak. He admits that when asked if he wanted a hearing, he responded "no." The strongest evidence in

his favor is that the prison regulations require a waiver of appearance to be in *writing* and to be signed by the inmate. From the fact that there is no written waiver, an inference can be drawn that Walker did not waive his right to be present. This, however, is not enough to raise a genuine issue of material fact when viewed in light of his admission that he declined the hearing. "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

▮ Walker has a stronger argument that he was denied the right to produce witnesses in his defense. Walker alleges that he indicated to the classification committee on July 27, 1984, that he planned to produce two witnesses, an inmate and a corrections officer, at his disciplinary hearing. He further alleges that on August 27, when he was brought to the rotunda where the hearing was to take place, he reiterated his request to call the inmate as a witness. In response, according to Walker, "Benedetti ask[ed] what can he testify to, I said he could talk for himself, then Benedetti said he could not come beyond the [illegible] anyway, I asked why, Benedetti said something about security." Declaration in Support of Motion for Summary Judgment. Walker allegedly did not waive his right to be present at the hearing until after this exchange. The prison officials provide no explanation for the denial of the request for the witness. Although slim, we conclude that this is enough to raise a genuine issue of material fact that Walker was denied the right to produce witnesses in his defense as required by *Wolff.*

Because Walker has raised a genuine issue of material fact that he was denied the right to call witnesses, we reverse the grant of summary judgment in favor of the prison officials on this issue.

### B

▮ Walker claims that the district court improperly granted summary judgment to the prison officials on his Eighth Amendment claim that he was deprived of adequate clothing.

▮ "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (internal quotations omitted). In order to meet the wantonness standard in a conditions of confinement case, "the inmate must show that the prison officials were deliberately indifferent to [his] suffering." *Jordan v. Gardner,* 986 F.2d 1521, 1528 (9th Cir.1993) (en banc).

▮ The denial of adequate clothing can inflict pain under the Eighth Amendment. *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982). Walker's allegations regarding the lack of clothing, however, are very vague and confusing. He indicated in his declaration in support of his motion for summary judgment that he did not receive a jacket and his boots when he was returned from a court hearing in Illinois. He contends that the only shoes he had were "the green slippers, the shower shoes, and the unwearable brown shoes," but he does not explain why the brown shoes were unwearable. Further, he does not allege that the weather conditions were such that the deprivation of a jacket inflicted pain of a constitutional magnitude. Most important, he does not clearly indicate the clothing that he *did* have. We conclude that Walker has not raised a genuine issue of material fact that he was denied adequate clothing under the Eighth Amendment, and we affirm the grant of summary judgment in favor of the prison officials on this claim.

### C

▮ Walker argues that the district court improperly dismissed the claims against Housewright because Walker failed to serve process within 120 days of filing the complaint.

Process was served on all defendants but Housewright by the United States Marshal. When service was not effectuated to Housewright within 120 days, the district court ordered Walker to show cause why House-

wright should not be dismissed. Walker responded that he requested the marshal to serve Housewright along with the other defendants. Walker, however, presented no evidence other than his own statement in support of this assertion. The district court concluded that Walker had not shown cause, and dismissed the claim.

 Dismissal for failure to serve within 120 days of filing is reviewed for an abuse of discretion. *Puett v. Blandford*, 912 F.2d 270, 273 (9th Cir.1990). In cases involving plaintiffs proceeding in forma pauperis, the United States Marshal, upon order of the court, is authorized to serve the summons and the complaint. *See* 28 U.S.C. § 1915(c); *Boudette v. Barnett*, 923 F.2d 754, 757 (9th Cir.1991). "[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint and ... should not be penalized by having his action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform his duties...." *Puett*, 912 F.2d at 275. So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service "is automatically good cause within the meaning of Rule 4(j)." *Sellers v. United States*, 902 F.2d 598, 603 (7th Cir.1990) (internal quotations omitted).

Here, Walker did not prove that he provided the marshal with sufficient information to serve Housewright or that he in fact requested that Housewright be served. The district court did not abuse its discretion in concluding that Walker failed to show cause.

### D

 Walker argues that the district court abused its discretion in failing to grant a writ of habeas corpus ad testificandum to allow Johnson to testify as a witness for Walker. Johnson was incarcerated in the Nevada State Prison in Jean, Nevada, located approximately 500 miles from where the district court sits. The district court declined to order the writ on recommendation from the magistrate judge because Walker refused to indicate to what Johnson would testify. Since the importance of Johnson's presence

could not be ascertained, the district court concluded that the inconvenience and expense of transporting him to the prison would outweigh any benefit he would provide.

In any event, after the district court denied the motion, the district court granted summary judgment on the merits of each claim; the only issue left for trial was damages. There is no indication in the record that Johnson's testimony would have been relevant to damages, and Walker did not include him on the pretrial witness list. We conclude that the district court did not abuse its discretion in refusing to grant the writ.

### E

Walker argues that the district court somehow erred in the discovery process. He does not, however, identify any particular order from which he appeals. We reject his claim of error.

Walker also contends that the district court abused its discretion in failing to grant a writ of habeas corpus ad testificandum allowing him to testify in person. This issue is discussed in Part III B *infra*, in conjunction with Helling's and Bates' argument that the district court erred in allowing Walker to testify via telephone.

### III

We next consider issues raised in Helling's and Bates' cross-appeal.

### A

As a preliminary matter, we note that the district court entered judgment dismissing the claims against Sumner, Gurries, Benedetti, and Sheehan; they thus have no standing to bring an appeal. We dismiss the appeal as to Sumner, Gurries, Benedetti, and Sheehan. Only Helling and Bates are proper appellants.

### B

Helling and Bates argue that the district court committed prejudicial error by allowing Walker to testify by telephone in violation of

the Federal Rules of Civil Procedure. Walker contends that the district court erred in refusing to order a writ of habeas corpus ad testificandum to allow him to be present in the courtroom. Because these issues arose during the trial on damages and because we vacate the portion of the judgment assessing damages, we do not need to reach those issues.

### C

■ Helling and Bates argue that the judge was biased in Walker's favor, and, as a result, they were denied a fair trial. Helling and Bates contend that the following actions by the court demonstrate the judge's bias: While ruling in the prison officials' favor on a motion, the judge commented that they were taking a petty position with regard to the particular issue; the judge ordered counsel for the prison officials to give its opening statement before Walker; the judge throughout the trial commented on the evidence; the judge ruled adversely to the prison officials on an evidentiary question; the judge asked Walker leading questions; and, the judge made a factual finding in favor of Walker based on testimony that the judge had elicited in questioning Walker.

A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if [he or she] abuses that discretion. A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition. A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality.

*United States v. Laurins,* 857 F.2d 529, 537 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); *see also United States v. Mares,* 940 F.2d 455, 464 (9th Cir.1991); *United States v. Mostella,* 802 F.2d 358, 361 (9th Cir.1986). Here, none of the acts described by Helling and Bates goes beyond the bounds of behavior deemed acceptable in *Laurins.* Certainly, none of the

incidents shows actual bias. Moreover, in a bench trial, as here, there is no worry that a jury will perceive an appearance of advocacy or partiality. In short, we conclude that Helling's and Bates' claim regarding bias is without merit.

■ To the extent that Helling and Bates make a separate argument that the questioning of Walker denied them the right to a fair trial, the argument is without merit. "[T]he trial judge may question a witness if he deems it necessary to clarify a matter or to more fully develop the facts...." *United States v. Trapnell,* 512 F.2d 10, 12 (9th Cir. 1975).

### D

■ Helling and Bates maintain that summary judgment in favor of Walker's claim that his transfer into disciplinary segregation before his disciplinary hearing violated his constitutional rights was improper. They argue that, in fact, Walker was held in administrative segregation until his hearing. Further, prison records show that prison officials referred to Walker's segregation as administrative and that his segregation status reports stated that he was in administrative segregation. Helling's and Bates' claim and these records indicate that a genuine issue of material fact exists concerning whether Walker was in administrative or disciplinary segregation prior to his hearing. Therefore, summary judgment was improper.

### E

Because we hold that summary judgment was improper on Walker's claim that he was held in disciplinary segregation prior to his hearing, we vacate the damages awarded by the district court for the alleged deprivations Walker suffered while in segregation.

Further, because we reverse the grant of summary judgment, we do not need to reach Helling's and Bates' claims that there was a genuine issue of material fact with regard to their personal involvement in Walker's transfer to disciplinary segregation and that there was insufficient evidence to support the district court's findings regarding their personal involvement.

## IV

The grant of summary judgment in favor of the prison officials on Walker's claim that he was denied procedural due process in the disciplinary hearing itself is REVERSED and REMANDED for further proceedings. The grant of summary judgment in favor of the prison officials on Walker's Eighth Amendment claim is AFFIRMED. The dismissal of the claims against Housewright is AFFIRMED.

The cross-appeals of Sumner, Gurries, Benedetti and Sheehan are DISMISSED. The judgment against Helling and Bates on Walker's claim that he was denied procedural due process by being placed in disciplinary segregation before his disciplinary hearing is REVERSED and REMANDED; the portion of the judgment assessing damages is VACATED.

AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED. The parties are to bear their own costs.