**Cindy L. GALVAN, Plaintiff,**

v.

**Dan CAROTHERS, et al., Defendants.**

**No. A93–238 CI (JWS).**

United States District Court,
D. Alaska.

April 21, 1994.

Randall Cavanaugh, Kirk Robinson & Cavanaugh, Anchorage, AK, for plaintiff Cindy L. Galvan.

John K. Bodick, Asst. Atty. Gen., Office of Special Prosecutions & Appeals, Anchorage, AK, for defendants Dan Carothers, Norm Anderson, and Richard Franklin.

## ORDER

SEDWICK, District Judge.

### INTRODUCTION

Defendants Dan Carothers and Norman Anderson (defendants) have moved for summary judgment to dismiss plaintiff Cindy L. Galvan's claims of violations of her constitutional rights to due process, equal protection, freedom of religion, and to be free from cruel and unusual punishment arising during her confinement at Lemon Creek Correctional Center. Plaintiff opposes the motion. Magistrate Judge Branson heard oral argument and has filed a report and recommendation recommending that the court deny defendants' motion. Defendants have objected to the magistrate's report and recommendation. This court reviews the motion *de novo*.

### FACTS

Plaintiff was an inmate at Lemon Creek Correctional Center (LCCC) convicted of second degree murder.[1] Plaintiff has been the subject of several classification hearings and decisions at LCCC. Initially, defendant Dan Carothers, Superintendent of LCCC, classified plaintiff as a medium security/maximum custody prisoner. Plaintiff complains that she was excluded from the classification process and not informed of her right to challenge the classification. Plaintiff was classified as maximum security/maximum custody though she scored as a close custody prisoner after she had been placed in administrative segregation in February 1990. On January 31, 1991, plaintiff was released into the prison's general population. Plaintiff was transferred to a facility outside Alaska on September 25, 1991. On September 8, 1992, plaintiff returned to Alaska due to a disciplinary violation. On October 2, 1992, plaintiff was returned to LCCC where she was again classified as a maximum security/maximum custody prisoner. During her

---

1. Plaintiff is currently incarcerated outside Alaska.

confinement as a maximum custody prisoner, and for the duration of her administrative segregation, plaintiff was placed in the last cell on Tier C. There were three other prisoners housed on the tier, all male.

Plaintiff has alleged a number of instances of verbal sexual harassment from the male prisoners. Plaintiff also alleges that she must shower in front of male correctional officers who can see her breasts. Additionally, plaintiff complains that she has no privacy when using the toilet in her cell, that other male prisoners can view her cell, and that she has been denied feminine hygiene products.

Plaintiff filed the present action to enjoin defendants from housing her on Tier C and to seek declaratory and monetary relief for alleged violations of her rights to due process, equal protection, and to be free from cruel and unusual punishment under the United States Constitution. This court granted plaintiff temporary injunctive relief requiring defendants to find plaintiff alternative prison housing. Defendants Carothers and Anderson now seek summary judgment on plaintiff's remaining claims.

## DISCUSSION

### I. *DUE PROCESS*

#### A. *Violation of Due Process*

█ Plaintiff asserts a claim for violation of procedural due process arising from various classification decisions made during her incarceration at LCCC. Defendants believe that plaintiff has failed to demonstrate any due process interest in her classification. A prisoner has no due process right under the Due Process Clause of the Fourteenth Amendment in her classification. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). However, a liberty interest may also arise from state law. *Meachum v. Fano,* 427 U.S. 215, 223–227, 96 S.Ct. 2532, 2537–2540, 49 L.Ed.2d 451 (1976). Defendants concede as much. Nevertheless, defendants characterize plaintiff's due process claims as unfounded.

█ It is clear that the state's failure to follow mandatory procedures may give rise to constitutional violations. *Hewitt v. Helms,* 459 U.S. 460, 472–73, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). However, the failure to follow mandatory procedures must result in some loss of a substantive right. *Walker v. Sumner,* 14 F.3d 1415, 1419 (9th Cir.1994) ("In analyzing a procedural due process claim, a court must first determine whether the claimant has been deprived of a liberty or property interest protected by the Constitution. . . ."). The failure to follow mandatory procedures does not itself offend the constitution. *Smith v. Noonan,* 992 F.2d 987, 989 (9th Cir.1993). The Ninth Circuit has made clear that "procedural requirements, even if mandatory, do not raise a constitutionally cognizable liberty interest." *Toussant v. McCarthy,* 801 F.2d 1080, 1087 (9th Cir. 1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).

█ State regulations and prison policies may create a liberty interest invoking procedural due process. *Walker,* 14 F.3d at 1419. Regulations and policies create such an interest only if they place "substantive limitations on official discretion." *Smith v. Sumner,* 994 F.2d 1401, 1405 (9th Cir.1993) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)). Sufficient limitation exists where a regulation includes "specific directives to the decisionmaker that if the regulatory substantive predicates are present, a particular outcome must follow." *Id.*

Plaintiff correctly notes that Alaska regulations and prison policies require that prisons use certain procedures to classify prisoners. An unsentenced prisoner has the procedural right to classification hearings after an initial classification, 22 AAC 05.226(c), as well as 48–hour notice of the hearing, 22 AAC 05.226(d), the right to be present at the hearing, present evidence, and cross-examine witnesses, State of Alaska, Department of Corrections, Policy and Procedure ("Policy and Procedure") § 735.03 VI.D.3.d.(2), incorporated by Policy and Procedure § 705.03 VI.B.2. The prisoner may also appeal a classification decision by the prison superintendent. Policy and Procedure § 705.03 VI.B.7. Similar procedures and rights exist for sen-

tenced prisoners. 22 AAC 05.216; Policy and Procedure § 735.01–03.[2]

■ Violation of these mandatory procedures alone cannot sustain a claim under § 1983. The regulations and policies regarding prisoner classification demonstrate that the substantive decision to classify rests within the discretion of prison officials, although subject to several mandatory procedures. Though the regulations provide extensive procedural safeguards, they do not vest in plaintiff a substantive liberty right. Nowhere in the regulatory scheme of prisoner classification does any regulation *mandate* a classification outcome based upon a certain factual predicate. Indeed, the regulations specifically permit the prison superintendent to disapprove or modify classification recommendations arrived at by the classification committee, though he must set forth his reasons. 22 AAC 05.216(d) and (e); 22 AAC 05.226(e) and (f); Policy and Procedure §§ 705.01 VI.B; 735.01 VI.C.8; and 735.03 VI.D.5.a. Therefore, plaintiff held no liberty interest in her right to classification hearings under state law.

## II. *EIGHTH AMENDMENT CLAIMS*

### A. *Violation of Eighth Amendment*

Plaintiff asserts a claim against defendants for cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution arising from her confinement in an all male prison wing. Plaintiff alleges she suffered constant and consistent harassment from male prisoners. Plaintiff specifically alleges that she was harassed by inmate Juan Cuisido when he cleaned the tier. Plaintiff recounts events in which Mr. Cuisido, who has the AIDS virus, made sexual advances and insinuations, including threats of physical harm, masturbated out-

side plaintiff's cell, threw fecal matter at her, and harassed plaintiff while she was using the toilet facilities in her cell. She also complains that all of the male inmates on Tier C discuss their sexual fantasies within plaintiff's hearing. She identifies two inmates, John Finley and Boris McLuke, who exposed themselves to her. Plaintiff details at least one other inmate than Cuizido who masturbated in an attempt to get plaintiff's attention. Plaintiff further states that she was required to shower in front of male correctional officers and walk past male maximum security/maximum custody prisoners.[3]

■ The Supreme Court has made clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* — U.S. ——, ——, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993). Because the alleged punishment in this instance was not part of plaintiff's sentence, but suffered during imprisonment, to state a claim under the Eighth Amendment plaintiff must prove that the deprivation or punishment was objectively serious, and that the prison officials acted with a "sufficiently culpable state of mind." *LeMaire v. Maass,* 12 F.3d 1444, 1451 (9th Cir.1993).

### 1. *Seriousness of Deprivation*

■ In the instant case, plaintiff challenges defendants placing her in an all male wing of the prison, thereby subjecting her to sexual harassment. The court measures plaintiff's confinement on an all male tier against the "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 289, 50 L.Ed.2d 251 (1976). However, "extreme deprivations are required to

---

2. Plaintiff was both an unsentenced and sentenced prisoner while placed on Tier C.

3. Attached to her opposition to defendants' Motion for Summary Judgment, plaintiff submits her affidavit dated May 6, 1993, in which she details the conditions of confinement as a maximum security/maximum custody prisoner after the court's Order granting temporary injunctive relief. Apparently, plaintiff was transferred from Tier C to a segregation cell located adjacent to a medical unit. Plaintiff complains that the cell

violates the settlement in *Cleary v. Smith,* 3 AN–81–5247 Civ.. (Dist.Ct.Alaska) in a variety of ways, including inadequate space and heating, the lack of natural light, and failure to allow her to keep her tray slot open. Plaintiff raises these allegations for the first time in her affidavit. As far as the court can tell, these allegations are largely irrelevant to her claims presently before the court, and are not read to state another cause of action.

make out a conditions-of-confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, — U.S. —, —, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (internal quotations and citations omitted). The United States Supreme Court has stated that to violate the Eighth Amendment's objective test the deprivation must include "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

■ Defendants contend that there is no evidence regarding minimal standards of privacy and decency for a woman inmate. The court finds this statement to be fantastic. Though a prisoners' privacy rights must give way to valid penological concerns, plaintiff's status as an inmate impacts not the least on the minimal standards of privacy and decency in the area of sexual harassment. *See Jordan v. Gardner*, 986 F.2d 1521 (9th Cir.1993) (*en banc*); *see also Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir.1988) ("Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."). The court finds that minimal standards of privacy and decency include the right not to be subject to sexual advances, to use the toilet without being observed by members of the opposite sex, and to shower without being viewed by members of the opposite sex. *See generally Ellison v. Brady*, 924 F.2d 872 (9th Cir.1991); *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir.1993) (*en banc*). Plaintiff's allegations of sexual harassment are sufficiently serious to satisfy the objective component of the Eighth Amendment analysis.[4]

### 2. *Deliberate Indifference*

■ Plaintiff must show not only that the deprivation was objectively serious, but that the offending conduct was wanton. *Wilson v. Seiter*, 501 U.S. at 315, 111 S.Ct. at 2336. This element requires the court to examine the state of mind of the person imposing the punishment. For purposes of Eighth Amendment analysis, the definition of wanton is not fixed, "but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). The Ninth Circuit has defined "wantonness" within the context of condition of confinement cases to require "deliberate indifference" to the prisoner's rights. *Jordan*, 986 F.2d at 1528.

In *Jordan v. Gardner*, female inmates challenged pat-down searches conducted by male guards under the Eighth Amendment. There, the prison officials carefully considered the challenged practice prior to implementing the policy. The officials were informed that cross-gender searches could cause harmful psychological effects to the female prisoners. After careful review, including admonitions not to institute the policy, the prison superintendent instituted the policy. The Ninth Circuit concluded that pain could result from cross-gender searches and examined whether the inmates met the deliberate indifference standard. The court answered that where prison officials knew of a risk of harm and failed to act to prevent that harm, those officials were deliberately indifferent to the inmates' rights. *Id.* at 1529; *see also Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325 ("The long duration of a cruel prison condition may make it easier to *establish* knowledge and hence some form of intent.")

■ Defendants argue that plaintiff has not and cannot establish the requisite mental intent to meet her burden of proving an

---

4. In their objections to the magistrate judge's Report and Recommendation, defendants raise the credibility of plaintiff and other inmates who have submitted affidavits in support of her claims. Counsel should know that matters of credibility are outside the scope of summary judgment. Indeed, the court is required to construe all inferences of fact in plaintiff's favor in deciding defendant's motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Eighth Amendment claim. However, *Jordan* instructs that a prisoner need not prove malice to demonstrate deliberate indifference. Plaintiff has submitted testimony that she complained of the situation to both defendants, Carothers and Anderson, especially about sexual harassment from inmate Juan Cuisido. Other inmates also state that they overheard plaintiff discuss the matter with defendant Carothers. The court is persuaded that there is sufficient evidence, which, if credited, establishes defendants knew or should have known of the potential risks inherent in placing a female inmate in an all male maximum security prison wing, as well as the actual situation that resulted. The court concludes that there is a genuine dispute of fact whether defendants' actions and inactions were deliberately indifferent to the pain caused plaintiff, especially in light of the State of Alaska's Department of Corrections' Policies and Procedures § 808.06 requiring separate housing for female inmates.

■■■■■ Defendants also rely on the untenable position created by having to place plaintiff in maximum custody. They state that there was simply no other place to confine Ms. Galvan. Ms. Galvan was the first female prisoner to be housed in maximum custody, and LCCC was admittedly ill prepared for the situation. The logistics of the matter, however, may not take precedence over plaintiff's constitutional rights.[5] *Jordan,* 986 F.2d at 1529–30. Moreover, the facts subsequent to this court's order suggest otherwise. After this court's order granting injunctive relief, plaintiff was confined in a cell next to the medical unit. Later, plaintiff was transferred to another prison facility. At oral argument before the magistrate judge, counsel for defendants also informed the court that LCCC was designating a separate wing for female prisoners in maximum custody. Remedial actions are generally considered irrelevant under Fed.R.Evid. 407, but such evidence is appropriate to prove feasibility of corrective measures. The evidence demonstrates that genuine issues of material fact exist as to defendants' deliber-

ate indifference to plaintiff's right to be free from cruel and unusual punishment.

### B. *Qualified Immunity*

■■■■■ Defendants assert that plaintiff's claims for violation of the Eighth Amendment are barred by the doctrine of qualified immunity. Government officials performing discretionary duties are accorded qualified immunity from civil liability so long as their actions do "not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 881, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). To determine whether qualified immunity is appropriate, a court must "identify the right allegedly violated, (2) determine whether the right was 'clearly established,' and (3) determine whether a reasonable official would have believed his or her conduct to be lawful." *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir.1992). The question of qualified immunity is one of law and should be resolved early in the case. *Elder v. Holloway,* —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985).

### 1. *The Right Allegedly Violated*

The parties do not discuss the nature of the right allegedly violated. Plaintiff brings her claim under the Eighth Amendment. Plaintiff has a well established right to be free from cruel and unusual punishment in her confinement. However, that statement is so general in scope as to be useless. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Camarillo v. McCarthy,* 998 F.2d 638, 640 (9th Cir.1993). Rather, the "properly particularized question" is whether at the time of her confinement in Tier C it was clearly

---

**5.** At oral argument before the magistrate, defendants detailed their argument that plaintiff's reason for this lawsuit was to get out of administrative segregation and out of LCCC. Even if true,

plaintiff's motivation in filing this suit is irrelevant to the motion and is largely irrelevant to the constitutionality of defendants' actions.

established that placement of a female inmate in an all male prison wing constituted cruel and unusual punishment.

### 2. *Clearly Established*

 A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Camarillo*, 998 F.2d at 640 (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3034). In this instance the Department of Corrections' Policy and Procedure § 808.06 V.A. requires "[s]eparate housing to segregate prisoners of the opposite sex." *See also* Policy and Procedure § 808.06 VI.A. (co-correctional facilities require separate sleeping quarters, day rooms, bath, and restroom facilities). However, the regulation does not create a "clearly established" *constitutional* right for purposes of qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (violation of administrative regulation did not clearly establish constitutional right allegedly violated).

 Plaintiff bears the burden of proving the right allegedly violated was clearly established. *Camarillo*, 998 F.2d at 639. Plaintiff does not attempt to explain why her right not to be placed in an all male prison wing was clearly established such that defendants are not entitled to qualified immunity. This alone is grounds for entering summary judgment in defendants' favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the court, obligated to resolve the issue of qualified immunity as a matter of law, finds that plaintiff's right not to be housed on an all male ward was not clearly established at the time of the alleged violations.

The parties point to no case detailing a situation where a female inmate is placed on an otherwise all male prison wing. The Ninth Circuit's decision in *Jordan* requires prison officials to recognize potential psychological effects resulting from the terms of confinement of female prisoners. There, the court held that clothed body searches of female prisoners by male correction officers constituted cruel and unusual punishment. *Jordan*, 986 F.2d at 1521. However, the Ninth Circuit decided *Jordan* after the great majority of events giving rise to this case had occurred.

Though defendants perhaps should have better anticipated the consequences of placing Ms. Galvan on an all male prison wing, the court cannot say that the action was a clearly established violation of her rights under the Eighth Amendment. As noted above, the closest factual analogy involves cross gender searches, and at the time of the incidents giving rise to the lawsuit, the state of the law concerning that issue was at best undecided, and perhaps contrary to plaintiff's position. Ninth Circuit precedent existed at the time of plaintiff's incarceration on Tier C that upheld the constitutionality of searches of male prisoners by female correctional officers under the Fourth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir.1988); *Grummet v. Rushen*, 779 F.2d 491 (9th Cir.1985). The Ninth Circuit, however, has never examined the constitutionality of searches performed by male correctional officers on female inmates under the Fourth Amendment. The Ninth Circuit expressly declined to decide that issue in *Jordan*. 986 F.2d at 1525. More importantly, the Ninth Circuit never addressed the constitutional implications of cross gender searches of female inmates under the Eighth Amendment prior to *Jordan*.

 Defendants have also analogized the legal duty in the present situation to a prison's duty to protect a prisoner from danger. Again, the analogy is incomplete. Besides inmate Cuisido's alleged attempts to infect her with the AIDS virus, plaintiff alleges no physical threats, but rather psychological sexual harassment. While the law has condemned such actions in the workplace, it has not addressed whether such actions arising from her confinement among male prisoners violate the Eighth Amendment. *See Ellison v. Brady*, 924 F.2d 872 (9th Cir.1991). Having found no case law existing at the time of the alleged wrongful conduct that defines the contours of placement of female prisoners within a prison to avoid psychological harm, the court finds that plaintiff has not alleged a

violation of a clearly established right.[6] Because the court finds that the right allegedly violated was not clearly established at the time of the alleged violation, it need not address whether a reasonable correctional officer would have believed his conduct was lawful.

### III. *EQUAL PROTECTION*

 Plaintiff asserts a claim for violation of her right to equal protection under. the Fourteenth Amendment arising from her detention on the all male prison wing. Defendants' motion places plaintiff's theory of the case at issue. Plaintiff may not sit idle. Plaintiff bears the burden of proof at trial to demonstrate that defendants denied her equal protection, and, therefore, must "make a sufficient showing to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment." *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989). Plaintiff is under an obligation to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

 The Equal Protection Clause requires that all persons similarly situated be treated similarly. *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir.1985). Plaintiff's Amended Complaint (Docket No. 18) alleges that defendants denied her equal protection when she was "denied proper housing and accommodations for female prisoners which *are* available at L.C.C.C." (emphasis in original). Here, plaintiff cannot point to any discrimination for there was no classification. Plaintiff was placed in the same area as all the other maximum security/maximum custody prisoners. In reality, plaintiff complains that defendants did not treat her differently based upon her sex. Because plaintiff cannot demonstrate any classification invoking her rights to equal protection, summary judgment is appropriate.

**6.** The court's conclusion that defendants are qualifiedly immune from claims for monetary damages in their personal capacity necessarily

### IV. *FIRST AMENDMENT*

Defendants contend that plaintiff asserts a claim for denial of her First Amendment right to practice her religious beliefs while in administrative segregation. The court finds no reference to any denial of religious practices in plaintiff's Complaint (Docket No. 2), Amended Complaint (Docket No. 18) or her Supplemental Complaint (Docket No. 78). Defendants argue that the claim is not properly before the court. The court agrees. There is simply no claim for violation of the First Amendment presently before the court. The court shall not create a claim for plaintiff, especially where she has twice amended her complaint.

**IT IS THEREFORE ORDERED THAT:**

Defendant Dan Carother's and Norman Anderson's Motion for Summary Judgment (Docket No. 39) is **GRANTED.**

requires dismissal of those claims. However, the decision does not affect plaintiff's claims for declaratory and injunctive relief.